IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

ROXANNE L. SOLURI, o/b/o X.P.S.,

       Plaintiff,

  v.                                    Civil Action No.
                                          7:14-CV-1165 (DEP)

CAROLYN A. COLVIN, Acting Commissioner
of Social Security,

       Defendant.

---

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP          HOWARD OLINSKY, ESQ.
300 S. State Street                NATHANIAL RILEY, ESQ.
5th Floor, Suite 520
Syracuse, NY 13202

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN    EMILY M. FISHMAN, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on June 1, 2015, during a telephone conference conducted on the record.  At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff's son was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: June 3, 2015
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------x
ROXANNE L. SOLURI O/B/O X.P.S.,

                         Plaintiff,

vs.                                     14-CV-1165

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                         Defendant.

------------------------------------x
```

*DECISION* – June 1, 2015

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

For Plaintiff:      OLINSKY LAW GROUP
                    Attorneys at Law
                    300 South State Street
                    Syracuse, New York 13202
                      BY: NATHANIEL RILEY, ESQ.


For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    26 Federal Plaza
                    New York, New York 10278
                      BY: EMILY M. FISHMAN, ESQ.



*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT: I'll have to let that be the last word.
2 I have before me a request for judicial review of an adverse
3 determination of the Commissioner of Social Security pursuant
4 to 42, United States Code, Section 405(g). The background of
5 this matter is as follows.
6    The action is brought by the claimant on behalf of
7 her son X.P.S., who was born in December of 2000. He is
8 currently 14 years old. Was 12 years old at the time of the
9 hearing in this matter. He attends a catholic private school
10 in Watertown and is in regular classes. That's at page 50.
11 He was in 6th grade at the time of the hearing. According to
12 him, he likes school and he does well at school. He had a 91
13 in social studies, 85 in math, 81 in science, no difficulty
14 with his teachers. That appears at page 44 of the
15 Administrative Transcript.
16    The plaintiff, or X.P.S. I should say, has a
17 history of Chiari malformation. It was the subject of the
18 decompression brain surgery in 2008. He also has a history
19 of bilateral foot, leg and hip pain of unclear etiology. He
20 developed headaches in or around 2010 but has not undergone
21 intensive treatment. He takes Ibuprofen and Tylenol with
22 codeine with mixed results.
23    He has treated with Pediatric Associates of
24 Watertown generally, including Dr. Sandra Timerman and
25 Dr. Gail Rose-Green, and with North Country Orthopedic Group,

1  Dr. Steven Fish.  He has also been seen on more than one
2  occasion by Dr. Danielle Katz at Upstate Orthopedics, and
3  twice by Neurology Associates of Central New York by Dr.
4  Zulma Tovar-Spinoza.
5  Several means of addressing his limitations, his
6  orthopedic limitations, have been tried, including 13
7  different castings, crutches, use of a wheelchair and use of
8  equalizer boots.
9  Procedurally, the application which is at issue in
10  this matter was filed on August 25, 2011 for Supplemental
11  Security Income, or SSI, benefits.  The hearing was conducted
12  by Administrative Law Judge Jennifer Gale Smith on February
13  23, 2013.  She rendered a decision on March 15, 2013.  The
14  Social Security Administration Appeals Council denied review
15  of the determination on August 7, 2014, making the ALJ's
16  decision a final determination of the agency.
17  In her decision Administrative Law Judge Smith goes
18  through the functional equivalence analysis contemplated
19  under the regulations, examines the six relevant domains,
20  finding that there is no limitation in acquiring and using
21  information.  There is a less than marked in attending and
22  completing tasks.  Less than marked in interacting and
23  relating to others.  Marked in moving around and manipulating
24  objects.  Less than marked in caring for himself.  And less
25  than marked in health and physical well being.

1     The standard, the overarching standard of review is
2  quite deferential.  My function is to determine whether
3  correct legal standards were applied and whether the decision
4  is supported by substantial evidence.  The term substantial
5  evidence is defined as such relevant evidence as a reasonable
6  mind might accept as adequate to support a conclusion.
7     The crux of this case really boils down to the
8  issue of functional equivalence, examining the six domains to
9  determine there is extreme limitation in one or marked in two
10 or more.  An extreme limitation is one that interferes -- is
11 an impairment that interferes very seriously with the
12 claimant's ability to independently initiate or sustain or
13 complete activities.  A marked limitation exists when the
14 impairment interferes seriously with the claimant's ability
15 to independently initiate, sustain and complete activities.
16    I would have to agree that the Administrative Law
17 Judge's decision in this case is not perfect and suffers from
18 a couple of obvious flaws, which we discussed during the oral
19 argument.  I attribute that to the volume, among other
20 things.  There certainly could have been a better and more
21 robust and clearer statement concerning credibility.  And
22 also there is, of course, the obvious error in stating that
23 the joint questionnaire did not indicate any behavior
24 modification strategies being implemented.
25    We went through the critical evidence in my view.

1  The Administrative Law Judge gave some weight to the opinions
2  of state agency consultant Dr. Jose-Santos, gave great weight
3  to the opinions of treating orthopedist Steven Fish, and
4  great weight to the joint evaluation as well as the
5  evaluation of Ms. Kneer.
6         In my view when those are taken together, they do
7  provide substantial evidence to support the determination.
8  Dr. Fish did render an opinion on the domains other than he
9  clearly did not have an opinion regarding acquiring and using
10 information.  He stated, "I would not have any comment on
11 that."  But he did have a statement regarding attending and
12 completing tasks, interacting with others.  He said, "I have
13 not personally seen issues with that, having known him for
14 some time now."  That clearly supports the Commissioner's
15 determination.  Moving about and manipulating objects, he did
16 find some difficulty, as did the Administrative Law Judge.
17 Caring for himself and overall health and physical well being
18 is not entirely clear but it doesn't appear that he finds any
19 specific issues with regard to those domains, saying, "I'm
20 unaware of any specific issues related to that."
21        Ms. Kneer, who taught X.P.S. in fifth grade,
22 found -- it's interesting because hopefully her students
23 follow directions better than she does.  The form clearly
24 indicates that if you answer no, then you don't need to go to
25 the specific rating of activities, but she did anyway.  She

1  found no difficulties in acquiring and using information,
2  none in attending and completing tasks, none in interacting
3  and relating to others, observing that he is polite, well
4  mannered and a pleasure to have in class.  No limitations in
5  moving about and in manipulating objects.  Although she does
6  say that it is hard to observe some of this because he cannot
7  participate in recess or physical activities.  And no
8  problems in caring for himself.
9          Obviously, as we've discussed, the joint
10 questionnaire is a little bit more limiting in that although
11 it states no problem in acquiring and using information or
12 attending and completing tasks, it does find that there are
13 problems with interacting and relating with others and finds
14 a very serious problem in playing cooperatively with other
15 children.  And notes that it was necessary to implement
16 behavior modification strategies; it doesn't specify what
17 those were.  Also finds limitations in caring for himself.
18          The thing that I found interesting was that
19 although the joint questionnaire did indicate that there were
20 problems interacting with others during his hearing
21 testimony, X.P.S. stated that he gets along well with
22 teachers and students.  That's at page 42.  At two different
23 places in the record the statement is made by treating
24 physicians that the plaintiff gets along with others.  At
25 page 334, and I think that is Dr. Rose-Green, if I'm not

1 mistaken. Yes. At 334 Dr. Rose-Green in 2011 notes that
2 X.P.S. is described as generally well behaved, both at home
3 and in school, using age appropriate discipline. Patient
4 does play sports, play cooperatively, get along with peers,
5 get along with parents, get along with siblings, and have
6 anxiety issues. The patient does not have anger issues.
7      At page 337, and that's from 2010, Dr. Timerman
8 makes similar statements. Patient does play cooperatively,
9 get along with peers and get along with parents. Patient
10 does not play sports.
11      So, although there is a potential dissenter, there
12 is substantial evidence when you look at the medical evidence
13 and the Kneer questionnaire and Dr. Fish and Dr. San
14 Jose-Santos to support the Administrative Law Judge's
15 determination in this domain.
16      As I said before, in terms of credibility I wish
17 that there had been a more robust discussion, but I've
18 reviewed carefully the hearing testimony and I don't see
19 anything, quite frankly, in the hearing testimony that could
20 have undercut the ALJ's determination. And in the end ALJ
21 Smith did say that the statements were not consistent with
22 the finding of disability. That's at page 20.
23      So I do find that there is substantial evidence
24 that supports the Commissioner's determination and I don't
25 find any indication that improper standards were applied. So

1  I will grant defendant's motion for judgment on the
2  pleadings, affirming the Commissioner's determination and
3  dismissing plaintiff's complaint.
4        I'll issue a short form order.  And I appreciate
5  the spirited argument and excellent written and verbal
6  presentations by both of you.  I hope you have a good
7  afternoon.
8        MR. RILEY:  Thank you, Judge.
9        MS. FISHMAN:  Thank you, Your Honor.
10              *              *              *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Eileen McDonough* (signature)

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter